USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/31/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ABBAS BEHZADI and ASGHAR BERENJIAN, :
doing business as BEHZADI & BRENJIAN
CARPET,                                                    :    **REPORT AND
                                                                RECOMMENDATION
                    Plaintiffs,                            :    TO THE HONORABLE
                                                                LORNA G. SCHOFIELD*****
      -against-                                            :
                                                                07 Civ. 7073 (LGS) (FM)
DAVID & SON ORIENTAL ANTIQUE RUGS                          :
CORPORATION and DAVID SHADAN,
                                                           :
                    Defendants.
------------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

I.   Introduction

       In this action, Plaintiffs Abbas Behzadi ("Behzadi") and Asghar Berenjian ("Berenjian"), doing business as Behzadi & Berenjian Carpet (collectively, "Plaintiffs"), seek to recover the balance outstanding on a series of transactions whereby they sold certain carpets to Defendant David Shadan ("Shadan"), who was doing business as Defendant David & Son Oriental Antique Rugs Corporation ("David & Son"). After counsel for both Defendants sought to withdraw, Shadan filed a Chapter 7 petition, thereby staying any further proceedings against him. (ECF No. 145). Thereafter, Judge Jones directed that a default judgment be entered against David & Son because it was not represented by counsel. (See ECF No. 147 at 2) (citing Lawrence v. U.S. S.E.C., 384 F. App'x 44, 45 (2d Cir. 2010) ("corporation may not appear pro se or be represented by

---

      ***** Toby Howard, a student at Berkeley Law, assisted in the preparation of this Report and Recommendation.

non-lawyer")).  The case then was referred to me to conduct an inquest.  (ECF No. 146).  For the reasons set forth below, I recommend that the Plaintiffs be awarded judgment against David & Son in the amount of $505,121.07, plus prejudgment interest from October 13, 2003, at the rate of $124.55 per day, and costs in the amount of $4,502.53.

II.     Background

Prior to the withdrawal of defense counsel, Judge Jones denied both sides' cross-motions for summary judgment, except to the extent that the Plaintiffs maintained that Shadan was David & Son's alter ego.  (ECF No. 125 at 13, 15-16).  With respect to the Defendants' liability, Judge Jones found that "[i]ssues of material fact abound."  (Id. at 15).  Since then, however, David & Son has defaulted by failing to retain counsel.  In light of David & Son's default, the Plaintiffs' well-pleaded allegations concerning issues other than damages must be accepted as true.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).[1]

By order dated August 30, 2012, I directed the Plaintiffs to serve papers setting forth proof of their damages and proposed findings of fact and conclusions of law

---

[1] Although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as (a) it has determined the proper rule for calculating damages, see Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  Here, because both requirements have been met, a hearing is unnecessary.

by October 15, 2012.  I further directed that David & Son respond by October 29, 2012.  (ECF No. 148).[2]  My order cautioned that, "[i]f no request for a hearing is made by any party, I shall make my report and recommendation on the basis of the papers submitted to me without any oral argument."  (Id.).  Although the Plaintiffs timely filed their inquest papers, (see ECF Nos. 151-52), David & Son has failed to file any opposition papers.

III.   Facts

The uncontested allegations of the Plaintiffs' Second Amended Complaint, as well as their inquest papers, establish as follows:

From around 1985 until 2005, the Plaintiffs operated a partnership in Iran to export carpets.  (Exs. G ("Behzadi June Dep.") at 14-15, 19-21; H ("Berenjian Dep.") at 15).[3]

Between 2002 and the fall of 2003, Shadan ordered carpets from the Plaintiffs on eight separate occasions, requesting that they be shipped to David & Son.  (Behzadi June Dep. at 26-27, 50, 67-68; Berenjian Dep. at 55-56; Ex. K ("Shadan Dep.") at 64).

Each of the eight carpet shipments to David & Son included an invoice for the carpets composing the shipment.  (Behzadi June Dep. at 45-47; Berenjian Dep. at 105-06; Shadan Dep. at 104-05; Ex. M ("Behzadi Dec. Dep.") at 41-42).  Behzadi also

---

[2]   My order actually was directed to both defendants, but, as noted previously, Shadan had no obligation to respond since this action had been stayed as against him.

[3]   All references to "Ex.__" refer to the exhibits attached to the Declaration of Bijan Amini, Esq., dated November 5, 2012.  (ECF No. 152).

followed up by faxing to Shadan a handwritten invoice and shipping documents reflecting both the prices and descriptions of the carpets in the shipment and the outstanding balance for any carpets previously shipped. (Behzadi June Dep. at 26-27, 51, 55-58, 62; Berenjian Dep. at 99-100, 104, 113; Shadan Dep. at 109, 111-13; Behzadi Dec. Dep. at 39-42). After receiving each carpet shipment, Shadan would call Behzadi to confirm delivery. (Behzadi June Dep. at 49, 58-60, 62).

This case arises out of the Plaintiffs' last three shipments to David & Son. In or around April 2003, the Plaintiffs shipped carpets ("Sixth Order") that David & Son received and accepted on or about May 10, 2003. (ECF No. 92 ("Second Amended Complaint" or "SAC") ¶¶ 12, 13; see Behzadi June Dep. at 63; Exs. R, S). Behzadi faxed the documents concerning this shipment to Shadan, who then called Behzadi to confirm his receipt of the invoice and shipping documents. (Behzadi June Dep. at 63-65; Berenjian Dep. at 93).

The following month, although David & Son still owed money for the Sixth Order, (Behzadi June Dep. at 150-51), the Plaintiffs shipped more carpets to David & Son ("Seventh Order"). (See Behzadi June Dep. at 149-50; Exs. T-W). Once again, Behzadi faxed the documents regarding this shipment to Shadan. (Behzadi June Dep. at 146-48; Shadan Dep. at 141). On or about July 12, 2003, David & Son received the carpets comprising the Seventh Order, and Shadan confirmed their delivery. (SAC ¶ 20). Neither Shadan nor David & Son ever paid for these carpets, however. (Behzadi June Dep. at 153).

Finally, in or around June 2003, the Plaintiffs agreed to sell still more carpets to David & Son ("Eighth Order"). (See Behzadi June Dep. at 154-57; Ex. X). After the Plaintiffs delivered those carpets to David & Son on or about July 26, 2003, Shadan confirmed that he had received them. (See Shadan Dep. at 136-38, 142; Exs. Y, Z, AA; SAC ¶ 28-29). Accompanying the Eighth Order was a statement indicating that David & Son owed the Plaintiffs approximately $540,000 for the unpaid balance of the Sixth, Seventh, and Eighth Orders. (Berenjian Dep. at 105). Behzadi also sent a confirmatory fax to the same effect. (Id. at 107, 109).

The Plaintiffs received further payments from Shadan against the Sixth Order on or about September 4, 14, and 21, and October 13, 2003. (Ex. P). Subsequently, about four or five months after delivery of the Eighth Order, Behzadi traveled to the United States to meet with Shadan in person. (Behzadi June Dep. at 161-62; Berenjian Dep. at 108-09). During their meeting, Shadan promised to send the Plaintiffs the money that David & Son owed against the Sixth, Seventh, and Eighth Orders. (Behzadi June Dep. at 164). The Plaintiffs, however, never received any additional sums from the Defendants. (Id. at 165).

IV. Discussion

    A. Liability for Breach of Contract

To state a prima facie claim for breach of contract under New York law, a complaint must allege: (1) the existence of a contract; (2) the plaintiffs' adequate performance of their obligations under that contract; (3) a breach by the defendant; and

5

(4) damages. Eternity Global Master Fund v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004); Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Although the Statute of Frauds ordinarily requires that a contract for the sale of $500 or more of goods be in writing to be enforceable, there is an exception for contracts between merchants, provided that the purchaser of the goods receives "within a reasonable time a writing in confirmation of the contract" and does not provide "written notice of objection . . . within ten days" thereafter. N.Y. U.C.C. § 2-201(1), (2).

   Here, there is no question that the Plaintiffs and the Defendants were merchants who entered into a series of contracts regarding the sale of carpets, and that the Plaintiffs performed thereunder by shipping carpets pursuant to the Sixth, Seventh, and Eighth Orders. Rather than complying with their obligations under those contracts, however, David & Son made only a partial payment for the Sixth Order, and paid the Plaintiffs nothing for the Seventh or Eighth Orders. Furthermore, although Behzadi sent David & Son invoices and other documents identifying the number of carpets shipped and their cost, Shadan failed to provide any notice that David & Son objected to the prices therein set forth. Since the Plaintiffs obviously sustained losses as a result of David & Son's failure to pay, they have established each required element of their breach of contract claim.

  B. <u>Damages</u>

   The damages awarded "for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the

contract."  Boyce v. Soundview Tech. Grp., Inc., 464 F.3d 376, 384 (2d Cir. 2006) (quoting Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003)). Further, those damages are to be "calculated at the time of the breach."  Id.

The Plaintiffs' accounting of their losses, which is based on their business records and their communications with Shadan, establishes that the Defendants' payment history (in Iranian rials) with respect to the Sixth, Seventh, and Eighth Orders, was as follows:

| ORDER | INVOICED AMOUNT | PAYMENTS RECEIVED | BALANCE DUE |
|---|---|---|---|
| Sixth | 2,373,300,000 | 773,155,000 | 1,600,145,000 |
| Seventh | 846,982,710 | 0 | 846,982,710 |
| Eighth | 1,709,513,610 | 0 | 1,709,513,610 |
| TOTAL | 4,929,796,320 | 773,155,000 | 4,156,641,320 |

(See Behzadi Dec. Dep. at 15-16, 24, 27-28, 37-40; Ex. P).

When damages are sustained in foreign currencies, New York courts apply the "breach-day rule," pursuant to which damages are calculated in United States dollars at the exchange rate prevailing on the date of the breach.  Middle East Banking Co. v. State St. Bank Int'l, 821 F.2d 897, 902-03 (2d Cir. 1987).  Here, David & Son made its final payment to the Plaintiffs on or about October 13, 2003.  (Ex. P at 2).  Additionally, by that date, David & Son should have remitted payment in full for all three of its last orders.  (SAC ¶¶ 11, 19, 27).  It is therefore reasonable to conclude that David & Son breached its contractual agreement with the Plaintiffs as of October 13, 2003.  A

commercial foreign exchange website on which the Plaintiffs rely suggests that the exchange rate on that date was 7,900 Iranian Rials to one United States dollar.  (See Pls.' Mem. at 8-9; Ex. Q (printout from oanda.com)).  According to a report by the United States Department of the Treasury, however, the exchange rate as of September 30 and December 31, 2003, was 8,229 Iranian rials to one United States dollar.  (See Treasury Reporting Rates of Exchange 2003, Department of the Treasury Financial Management Service International Funds Branch, available at United States Government Printing Office, www.gpo.gov; see also Reference Exchange Rates, Central Bank of the Islamic Republic of Iran, available at www.cbi.ir/exrates/rates_en.aspx (reflecting exchange rate of 8,337 Iranian rials to one United States dollar as of October 13, 2003)).  For that reason, I have chosen to apply the Government's published exchange rate, which leads to the conclusion that the total amount David & Son had failed to pay as of October 13, 2003 is $505,121.07 (4,156,641,320 / 8,229).

      C.     Prejudgment Interest

The Plaintiffs also seek to recover prejudgment interest on their damages.  (Pls.' Mem. at 9).  Under New York law, "[p]rejudgment interest in a breach of contract action is mandated," Gizzi v. Hall, 767 N.Y.S.2d 469, 472 (3d Dep't 2003), so that an aggrieved party may be made whole, Spodek v. Park Prop. Dev. Assocs., 96 N.Y.2d 577, 581 (2001).  Section 5004 of the New York Civil Practice Law and Rules ("CPLR") provides that the Plaintiffs may recover such prejudgment interest at the rate of nine percent per annum.  CPLR § 5004.

CPLR § 5001(b) directs that prejudgment interest "be computed from the earliest ascertainable date the cause of action existed," or, in the event that damages were incurred at various times, "upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Here, the Plaintiffs have suggested that interest be calculated from October 12, 2003, the day immediately preceding David & Son's last payment. (Pls.' Mem. at 9). Since the breach evidently occurred the following day, October 13, 2003 is a reasonable date from which to calculate prejudgment interest. (See Ex. P at 2). Accordingly, from that date through the date final judgment is entered, the Plaintiffs should be awarded prejudgment interest at the rate of $124.55 per day ($505,121.07 x .09 / 365).

      D.      <u>Costs</u>

The Plaintiffs also seek to recover taxable costs in the amount of $4,524.25. (Pls.' Mem. at 8). The taxable costs that a prevailing party may recover as a matter of course include filing fees, the cost of serving process, deposition transcript expenses (if the transcripts are used at trial or in connection with a dispositive motion), and necessary copying costs. See 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1); Local Civ. R. 54.1. Here, the Plaintiffs have submitted documentation establishing that, in total, they incurred $4,502.53 in taxable costs for filing ($350), service of process ($189.93 + $100 + $765), and deposition transcripts ($3097.60). (See Exs. CC-FF). Accordingly, they should be awarded costs in that amount.

V.     Conclusion

For the foregoing reasons, I recommend that the Plaintiffs be awarded damages in the amount of $505,121.07, plus prejudgment interest at the rate of $124.55 per day from October 13, 2003 through the date judgment is entered, and costs in the amount of $4,502.53.

VI.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield, United States District Judge, at the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York, 10007 and to the chambers of the undersigned at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for

filing objections must be directed to Judge Schofield. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:   New York, New York
         October 31, 2013

                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge

Copies to:

Plaintiffs' Counsel via ECF

David & Son Oriental Antique Rugs Corporation
18 The Hemlocks
Roslyn Estates, New York 11576